**AMERICANS UNITED FOR SEPARATION OF CHURCH AND STATE, A Corporation; Benjamin Baum; Phyllis Ball; Walter Bergman; John Charles Bearden; Gilbert R. Davis, and James T. Weaver, Plaintiffs–Appellees,**

v.

**CITY OF GRAND RAPIDS, a Municipal Corporation, Defendant,**

v.

**CHABAD HOUSE OF WESTERN MICHIGAN, a Corporation, Intervenor–Appellant.**

**No. 90–2337.**

United States Court of Appeals, Sixth Circuit.

Dec. 13, 1990.

Albert Dilley, Grand Rapids, Mich., for plaintiffs-appellees.

G. Douglas Walton, Deputy City Atty., Grand Rapids, Mich., for defendant.

Richard G. Leonard, Douglas P. Vanden Berge, Rhoades, McKee, Boer, Goodrich & Titta, Grand Rapids, Mich., David G. Webbert, Nikki Kuckes, Bradford M. Berry, Nathan Lewin, David I. Gelfand, Miller, Cassidy, Larroca and Lewin, Washington, D.C., for intervenor-appellant.

Before GUY and BOGGS, Circuit Judges, and EDWARDS, Senior Circuit Judge.

## I

BOGGS, Circuit Judge.

For the past six years, the City of Grand Rapids has permitted the Chabad House, an arm of the Lubavitch movement of the Jewish faith, to erect a privately-owned menorah in Calder Plaza, a publicly-owned area near a number of buildings of the City of Grand Rapids and other governments. The menorah remains during the season of Chanukah, a Jewish religious holiday lasting eight days in December. *See County of Allegheny v. American Civil Liberties Union*, 492 U.S. 573, 109 S.Ct. 3086, 3095–97, 106 L.Ed.2d 472 (1989).

This year, on November 13, a suit was filed against the City, challenging this action as a violation of the Establishment Clause of the first amendment and seeking an injunction to prevent the granting of a permit, or the carrying out of any action under a permit, if it were granted. On December 5, six days before the holiday was to begin, Judge Enslen granted an injunction against the City. He ruled from the bench, and we have no transcript or written opinion before us.

When Chabad learned that Grand Rapids might not appeal this decision, it sought to intervene. On Friday, December 7, four days before the start of Chanukah, Judge Enslen scheduled a hearing on the motion to intervene on December 18, at the end of Chanukah. This action would obviously have the effect of denying Chabad judicial review at a time when such review could be meaningful.

On Monday, December 10, Chabad appealed what it called a denial of its right to intervene and, assuming that it could intervene, filed a notice of appeal from the decision granting an injunction, and sought a stay.

## II

■ Turning first to procedural matters, we believe Chabad can intervene as of right. Rule 24(a) reads as follows:

Upon timely intervention anyone shall be permitted to intervene in an action … (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

An applicant for intervention as of right under Rule 24(a) must therefore, upon timely application, show three things. He must show that "(1) he claims an interest relating to the property or transaction that is the subject of the action, and (2) he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless (3) his interest is adequately represented by existing parties." 7C C. Wright and A. Miller, *Federal Practice and Procedure*, § 1908.

■ We believe that Chabad meets all necessary requirements to qualify for intervention as of right. First, Chabad's application is clearly timely. Second, Chabad has an interest in the property that is the subject of the suit. Chabad owns the menorah, the disposition of which during Chanukah the plaintiffs are attempting to control. Any property owner has an interest in the disposition of his property during a particular span of time, and the fact that the property and the owner before us are inherently religious does not change that fact. *See, e.g., Decker v. United States Department of Labor*, 473 F.Supp. 770 (E.D.Wis.1979) (Archdiocese of Milwaukee held intervenors as of right in suit alleging that distribution of CETA funds to Archdiocese violates the Establishment Clause). Third, Chabad would be impaired or impeded in protecting its interest in the disposition of its menorah if it is not a party to this case. The court will decide whether it can place its menorah in Calder Plaza during the eight days of Chanukah, and Chabad would be prevented from so placing the menorah even if it were not a party. Fourth, Chabad's interest is not being adequately protected by any current party. The plaintiffs are clearly adversaries to Chabad's interest, and Chabad's original

defender, the city of Grand Rapids, has abandoned that role by its failure to appeal. We agree with the District of Columbia Circuit that a decision not to appeal by an original party to the action can constitute inadequate representation of another party's interest. *Smuck v. Hobson,* 408 F.2d 175 (D.C.Cir.1969). The City's decision in this case effectively would destroy Chabad's ability to place its menorah in Calder Plaza during Chanukah absent Chabad's entry into this suit as an intervenor.

■ Having determined that Chabad qualifies for intervention as of right, we must decide if we are permitted to so hold at this stage in the proceedings. Denial by a district court of an application for intervention as of right under Rule 24(a) is appealable. *United States v. Dallas County Commission,* 850 F.2d 1433 (11th Cir.1988), *cert. denied,* 490 U.S. 1030, 109 S.Ct. 1768, 104 L.Ed.2d 203 (1989). However, we do not have a formal denial of Chabad's application before us. Judge Enslen merely delayed a hearing on Chabad's motion until the end of Chanukah. The question we must decide is whether such a delay is the practical equivalent of a denial of Chabad's application.

We hold that it is. We reach this conclusion by keeping in mind the purpose of Rule 24(a). "The general purpose of original Rule 24(a)(2) was to entitle an absentee, purportedly represented by a party, to intervene in an action if he could establish with a fair probability that the representation was inadequate." Notes of Advisory Committee on Rules, 1966 Amendment. Chabad's interest in this case will disappear when Chanukah ends. Grand Rapids's failure to appeal placed that interest at risk by removing from the action the only party who could argue to the court that the placement of Chabad's menorah in the Plaza for Chanukah was not unconstitutional. Delaying a hearing on Chabad's application until its interest is almost non-existent is tantamount to denying it. The spirit of Rule 24(a)(2), if not its letter, requires us to treat any order of a district court as a denial of an application to intervene that has the same effect on the intervenor's interest as would an outright denial.

We also hold that we will expedite this case by permitting Chabad to combine an appeal from the district court's injunction simultaneously with the application to intervene that permits them to make such an appeal. We note that had the district court granted Chabad's motion, as we hold that it should have, the court's order of injunction would be appealable as an interlocutory order. 28 U.S.C. § 1292(a)(1). As Chabad's interest dissipates with every passing day, we would fail to enforce the purpose of Rule 24(a) if we did not permit it to appeal this decision in a timely fashion that permits it to protect that interest. The stay motions are therefore properly before us.

### III

■ We must decide, therefore, whether we should stay Judge Enslen's order. Under Fed.R.App.P. 8(a), we must examine four factors when deciding whether to issue a stay. These factors are: 1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; 2) whether the applicant will be irreparably injured absent a stay; 3) whether issuance of the stay will substantially injure the other parties interested in the proceeding, and 4) where the public interest lies. *Hilton v. Braunskill,* 481 U.S. 770, 776, 107 S.Ct. 2113, 2119, 95 L.Ed.2d 724 (1987). No party seriously contends that the last three factors are relevant to our determination. We find that one party or the other will be irreparably harmed by a decision granting or denying the stay. The public interest lies in a correct application of the relation between the first amendment's guarantee of free speech and its bar to any law respecting the establishment of a religion.

■ Thus, the decision on the stay motion must turn on Chabad's likelihood of success on the merits in its appeal. We strongly emphasize that we are not now deciding the appeal. That must wait until full briefing and the opportunity for oral argument. At the same time, we are re-

quired to examine the merits and at least intimate an attitude toward them, while fully recognizing that our estimate of those merits is not binding on whatever panel will determine the ultimate appeal.

The number of cases concerning displays of allegedly religious objects in some proximity to or connection with public property, functions and events has become legion. *See, e.g.,* Annotation, *"Erection, Maintenance, or Display of Religious Structures or Symbols on Public Property as Violation of Religious Freedom,"* 36 A.L.R.3d 1256 (1971); Comment, *Of Crosses and Creches: The Establishment Clause and Publicly Sponsored Displays of Religious Symbols,* 35 Am. U.L.Rev. 477 (1986). However, this case has features that reduce the relevant precedents to a manageable number.

The object in question, a menorah, is privately-owned, erected and maintained. Its placement involves no use of public funds. The only direct involvement of the city is in granting a permit for the placement on public property and allowing its property to be used. The area in which the menorah is placed is a traditional public forum. According to Chabad, the area has been used in the past for various activities, including a Right to Life rally, an Italian–American festival that included a Catholic mass, a hunger walk by the Grand Rapids Area Council on Ecumenicalism, and a Latvian flag-raising ceremony. This area has at least somewhat more of an aura of centrality to the city government than any random piece of public property, such an ordinary city park, a garbage dump, or a baseball diamond.

The menorah, at the insistence of the city government, carries a sign reading:

Happy Chanukah to All

This Menorah display has been erected by Chabad House, a private organization. Its presence does not constitute an endorsement by the City of Grand Rapids of the organization or the display.

To grant a stay, therefore, we must decide that there is a substantial likelihood that our court will ultimately answer the following question in favor of Chabad: May a menorah be placed standing alone on publicly-owned property traditionally used as a public forum without violating the Establishment Clause.

We begin our analysis with *American Civil Liberties Union of Kentucky v. Wilkinson,* 895 F.2d 1098 (6th Cir.1990). In that case, a creche display was modified after a district court order, 701 F.Supp. 1296 (E.D.Ky.1988), was accepted by the supporters of the creche. *Wilkinson,* 895 F.2d at 1101–02. Under the order, a small stable was placed on the State Capitol Grounds, in a prominent location, at least 300 feet from the Capitol Building. *Id.* at 1100. Most of the time, the stable did not contain any human or animal figures, but from time to time, figures and human actors would take the roles of characters from the nativity scene, transforming the stable into a creche. Under the district judge's order, a sign was affixed at all times, stating that the display "was not constructed with public funds and does not constitute an endorsement by the Commonwealth of any religion or religious doctrine." *Ibid.*

Further, the court specifically required that a sign inform the public that "responsible citizens" could use the stable at other times, "for holiday ceremonies, pageants or displays." *Id.* at 1102 n. 2. This court specifically construed the district court's order to make the stable available for holiday displays other than nativity scenes. *Id.* at 1102. By a 2–1 vote, our Circuit upheld the display. *Id.* at 1107. Thus, we emphasized that the creche itself was a public forum, not just the grounds, and we noted agreement, *Id.* at 1102, with Judge Meskill's dissent in *Kaplan v. City of Burlington,* 891 F.2d 1024 (2d Cir.1989).

In that case, the City allowed a menorah to be placed in a park, near the City Hall, known as City Hall Park. The menorah was located 60 feet from City Hall, and bore a sign stating that it was sponsored by Lubavitch of Vermont, but bore no disclaimer as to government support. *Id.* at 1029. The majority emphasized that, from certain angles, the menorah could appear

to be superimposed on City Hall, though the dissent noted that from other angles, the menorah appeared superimposed on a bank, a restaurant or a vacant lot. *Id.* at 1030, 1033. By a 2–1 majority, the Second Circuit held the display unconstitutional. *Id.* at 1031.

In *Smith v. County of Albemarle, Virginia*, 895 F.2d 953 (4th Cir.1990) the Fourth Circuit addressed the constitutionality of a creche on the lawn of the County Building. At first, there was only a sign stating sponsorship by the Jaycees, but the original sign was later replaced with a "larger" sign, mildly disclaiming city sponsorship, reading: "Sponsored and maintained by Charlottesville–Albemarle Jaycees not by Albemarle County." *Id.* at 955. The Fourth Circuit, also by a 2–1 vote, held this display unconstitutional. *Id.* at 960. The dissenting judge would have remanded for a factual hearing as to the effect of the newly-worded and larger sign on the potential for public inference of an "endorsement." *Id.* at 961.

These are the only reported circuit court cases that we know of involving the "naked" placement of a religious symbol on prominent public property, without the secular adornments that spelled constitutionality in cases involving Pawtucket, *Lynch v. Donnelly*, 465 U.S. 668, 104 S.Ct. 1355, 79 L.Ed.2d 604 (1984) (5–4); Scarsdale, *McCreary v. Stone*, 739 F.2d 716 (2d Cir. 1984), *aff'd by an equally divided court sub nom., Board of Trustees of the Village of Scarsdale v. McCreary*, 471 U.S. 83, 105 S.Ct. 1859, 85 L.Ed.2d 63 (1985) (4–4); and Clawson, *Doe v. City of Clawson*, 915 F.2d 244 (6th Cir.1990) (3–0); and whose insufficiency spelled unconstitutionality in Chicago, *American Jewish Congress v. City of Chicago*, 827 F.2d 120 (7th Cir.1987) (2–1) and Birmingham, Michigan, *American Civil Liberties Union v. City of Birmingham*, 791 F.2d 1561 (6th Cir.), *cert. denied*, 479 U.S. 939, 107 S.Ct. 421, 93 L.Ed.2d 371 (1986) (2–1).

Two other cases bear mentioning. In *County of Allegheny v. American Civil Liberties Union*, 492 U.S. 573, 109 S.Ct. 3086, 106 L.Ed.2d 472 (1989), by a 6–3 vote,

the Supreme Court upheld the placement of a menorah directly in front of the Pittsburgh/Allegheny County City–County Building, with a sign reading:

> During this holiday season, the City of Pittsburgh salutes liberty. Let these festive lights remind us that we are the keepers of the flame of liberty and our legacy of freedom.

*Id.* 109 S.Ct. at 3095.

The menorah was "placed at the Grant Street entrance to the City–County Building ... next to the city's 45–foot Christmas tree, against one of the columns that supports the arch into which the tree was set." *Id.* at 3097. It was thus not completely "naked," but did not have the full trappings usually required in the other *Lynch* type cases. Also, the menorah was "stored, erected and removed each year by the city." *Ibid.* A creche placed within the County Courthouse was found unconstitutional by a 5–4 vote.

We note that the *Allegheny County* case did not rest on a public forum analysis. Indeed, the Supreme Court specifically noted that the defenders of the creche did not raise the public forum argument. *Id.* 109 S.Ct. at 3104 n. 50.

In 1989, following the *Allegheny County* decision, the City of Pittsburgh rejected a request to place the menorah again, and suit was brought in an attempt to force the City to do so, under the traditional doctrine that if a use is permissible in a public forum, it is unconstitutional discrimination and deprivation of first amendment rights to deny use based on the message conveyed, or on any grounds other than generally applicable regulations of time, place, and manner of use. The following sequence of decisions then resulted.

The district court granted an injunction requiring the city to allow the placement, on public forum grounds. *Chabad v. City of Pittsburgh*, CA No. 89–2432 (W.D.Pa. Dec. 21, 1989).

The Third Circuit stayed that order. No. 89–3793 (3d Cir. Dec. 21, 1989).

Justice Brennan vacated the Third Circuit's stay reinstating the order requiring

the city to allow the placement. 58 U.S. L.W. 3426 (Dec. 22, 1989).

The Supreme Court, three justices dissenting, declined to vacate Justice Brennan's order. —— U.S. ——, 110 S.Ct. 708, 107 L.Ed.2d 729 (1989).

Thus, although there was no clear statement of law or reasoning in any of the decisions, all of which were rendered within one week, start to finish, the ultimate result was that a city was forced to allow the display of a nearly-naked menorah on the grounds that it was being placed in a traditional public forum and contained appropriate and sufficient disclaimers.

## IV

With this history before us, we return to the question of the likelihood of success of Chabad on appeal. We first note that these cases are intensely controversial. With the exception of *Clawson*, every one of the relevant cases produced a split decision, even when only three judges were involved. Thus, any decision on likelihood of success must be confessedly tentative. Even so, when we consider the precedents as a whole, our Circuit's precedents in particular, and our view of the better law, we believe that Chabad has a substantial likelihood of succeeding on the merits and should be granted the stay. We emphasize the following factors:

1) No court has forbidden a display with a disclaimer this strong and this disassociated from physical connection with the seat of government of the granting agency. *Kaplan* had no disclaimer, 891 F.2d at 1026; *Albemarle* had a weaker disclaimer and one that entered into the case late in the game, 895 F.2d at 955. The majority does not discuss the change in disclaimers. *See id.* at 955 n. 2. *Kaplan* and *Albemarle* were physically closer to the government building and in areas more intimately connected with the granting authority. *Albemarle* was on the lawn of City Hall, *Albemarle*, 895 F.2d at 959; *Kaplan* was in City Hall Park, 60 feet away from City Hall, *Kaplan*, 891 F.2d at 1029. Here, as plaintiffs describe it, the menorah is "about 150 feet from the ... Calder stabile, the

symbol of Grand Rapids city government." They also note that the backdrop consists "not of one government building but two, ... including the Federal Building, State Office Building, and Probate Court Building[,] which are immediately adjacent or across the street...." Calder Plaza, though surrounded by a number of buildings of various governmental authorities, is not as clearly identified, by name or function, with the granting authority. And it would seem odd to make this factor decisive, as it would exclude from otherwise available public forums, certain groups or displays, namely religious ones, simply because of the pervasive presence of government buildings in the centers of our major cities.

2) Our Circuit has indicated a tendency to accept the public forum argument. *Wilkinson* shows this, and there is dicta in *Wilkinson* indicating approval of the dissent in *Kaplan*, not the majority opinion. 895 F.2d at 1102. (Though, of course, the dissent in *Wilkinson* relies on and approves of the majority in *Kaplan. Id.* at 1112.)

3) The Supreme Court's action in the 1989 Chabad case indicates a sympathy for the public forum argument, even up to the extent of forcing a city to allow a display, not just permitting it.

4) On our tentative view of the merits, we believe Judge Meskill had it about right when he stated (with bracketed material adding facts peculiar to our case):

> The erection of a privately owned and maintained religious symbol, accompanied by a sign identifying its sponsor [and disclaiming government sponsorship], for a relatively short period of time in a traditional public forum does not convey a message of governmental endorsement of religion merely because the forum is located next to City Hall [in a public plaza near buildings of several governments].

*Kaplan*, 891 F.2d at 1034 (Meskill, J., dissenting).

The fundamental question is this: is a given display so much like other activities

permitted in a public forum that it would deny rights to keep the display out of an area where others are permitted; or, is the display so much like an activity that would only be permitted (or would be viewed by a reasonable observer) as an endorsement of religious belief that it would violate the Establishment Clause to allow it to remain.

In their filing in opposition to the stay, plaintiffs argue that the placement of a symbol in a public forum differs from the presentation of speeches, religious meetings, or other uses that consist primarily of the actions of human beings. *See Kaplan,* 891 F.2d at 1030. We are not currently persuaded that this is a proper reading of the Supreme Court's decision in *Widmar v. Vincent,* 454 U.S. 263, 102 S.Ct. 269, 70 L.Ed.2d 440 (1981) (state university's equal-access policy for student groups, including religious groups, does not violate Establishment Clause). We see no reason to conclude that an unadorned symbol, with a strong disclaimer, would convey endorsement to a reasonable person any more than the "Easter sunrise services [and] assorted weddings" in *Albemarle,* 895 F.2d at 955, or the gospel radio station performance, "Jesus rally . . . and Maranatha Church . . . food and clothing distribution" in *Kaplan,* 891 F.2d at 1026. These activities were not challenged by any of the judges in those cases as falling outside acceptable uses in a public forum. In our view, a reasonable person would view all such activities in a traditional public forum as being in the context of use of the forum, not as an endorsement. A person who would view the menorah here as an endorsement would have no difficulty viewing the obviously religious observances and rallies in a prominent public place in those cases as endorsements as well.

On the facts as we now understand them, the balance tips in favor of the public forum doctrine. The disclaimer sign is very large and explicit; it is very unlikely, given the demographics of the area, that anyone really believes that the City of Grand Rapids is endorsing Judaism; the Plaza is equally open to those who would, with permission, erect Christmas trees, anti-religious symbols, or question marks.

While these views are only those of the subscribing judges, and are subject to revision on full hearing, we find them sufficient to grant a stay in this case. This is particularly true when the display has proceeded unmolested for six years. The parties that are, in effect, challenging the status quo must bear the burden of last-minute action here, precluding a full consideration before action must be taken, one way or the other. Since this case is certainly capable of repetition, our court will be able to render a decision upon full briefing and argument in time for next year's Chanukah season. Those who believe, as plaintiffs apparently do, that this display would be permissible if in some proximity to Christmas trees and other secular or commercial objects are at liberty to seek to place or have the City place such artifacts on the Plaza as well. However, we do not believe that such aesthetic and landscape architectural considerations are likely to undercut the vitality of the doctrine that permits regulation of use of a public forum only on content-neutral criteria of time, place, and manner. *Widmar,* 454 U.S. at 276, 102 S.Ct. at 278.

As previously noted, this decision is only with regard to the situation before us: a court is enjoining a city from taking action it may desire to take to permit the menorah. There is some intimation that the City of Grand Rapids's failure to take an immediate appeal may indicate some changing of its mind. We have no occasion to consider whether that is true. Any legal consequences of a refusal to grant the requested permit need not be considered until the situation arises.

This opinion is in further explication of our order issued December 11, staying the injunction ordered by Judge Enslen, pending appeal.