John EULITT, et al., Plaintiffs,

v.

**MAINE DEPARTMENT OF EDUCATION, et al.,**
**Defendants.**

No. CV–02–162–B–W.

United States District Court,
D. Maine.

March 9, 2004.

Stephen C. Whiting, Whiting Law Firm, P.A., Portland, ME, Vincent P. McCarthy, Kristina J. Wenberg, The American Center for Law and Justice–Northeast Inc., New Milford, CT, for Plaintiffs.

Paul Stern, Assistant Attorney General, Sarah A. Forster, Assistant Attorney General, William H. Laubenstein, III, Maine Assistant Attorney General, Augusta, ME, for Defendants.

## ORDER AFFIRMING THE RECOMMENDED DECISION OF THE MAGISTRATE JUDGE

WOODCOCK, District Judge.

In *Strout v. Albanese,* 178 F.3d 57 (1st Cir.1999), the First Circuit upheld the constitutionality of 20–A M.R.S.A. § 2951(2), which provides only nonsectarian schools are eligible for receipt of public funds for tuition purposes.[1] The Plaintiffs invite this Court to revisit *Strout* in light of subsequent United States Supreme Court decisions. Based on the doctrine of *stare decisis,* this Court declines to do so and affirms the Report and Recommended Decision of Magistrate Judge Kravchuk, recommending summary judgment in favor of the State of Maine.[2]

---

1. 20–A M.R.S.A. § 2951 reads as follows:

   A private secondary school may be approved for the receipt of public funds for tuition purposes only if it: (2) Is a nonsectarian school in accordance with the First Amendment of the United States Constitution.

2. Both parties filed motions for summary judgment. The Magistrate Judge recommended that this Court deny Plaintiffs' motion for summary judgment and grant Defendants' motion for summary judgment. The Magistrate Judge's Recommended Decision reached the merits of the parties' Establishment Clause and Equal Protection Clause arguments. Based on the doctrine of stare decisis, however, this Court concludes it cannot address the merits of the constitutional issues the parties have argued. The Recommended Decision is affirmed, because the Magistrate Judge's Recommended Decision recommends

## I. Factual Background

The Plaintiffs, John and Belinda Eulitt, on behalf of themselves and their daughter, Cathleen Eulitt, and Kelly MacKinnon, on behalf of herself and her daughter, Lindsey Freeman, seek public funding to pay for their daughters' tuition at St. Dominic's, a Catholic high school. Plaintiffs are residents of Minot, Maine, which has public schooling from kindergarten through eighth grade. Since Maine law requires each town to provide a free public education for its residents from kindergarten through twelfth grade, Minot has contracted with a nearby school administrative district to allow its residents to attend Poland Regional High School (PRHS). At least ninety percent of its high school age children attend PRHS; however, the Minot School Committee and Minot School Superintendent have the authority to approve tuition payments to a high school other than PRHS, if the students have "educational program requirements that may not be offered in association with [PRHS]." Plaintiffs contend the Minot School Committee and Superintendent should approve tuition payments to St. Dominic's on the ground that PRHS does not teach Catholicism, an educational program available at St. Dominic's.[3] Plaintiffs have brought suit against the Maine Department of Education and its Commissioner,

seeking declaratory and injunctive relief as well as damages for alleged constitutional violations.[4] Plaintiffs and Defendants have moved for summary judgment. Plaintiffs and Defendants have moved for summary judgment in their favor.

## II. Discussion

In 1999, the First Circuit and the Maine Supreme Judicial Court rejected constitutional challenges to § 2951(2). *Strout*, 178 F.3d at 60; *Bagley v. Raymond Sch. Dep't*, 1999 ME 60, 728 A.2d 127 (1999). Both decisions were based, in part, on the premise that the Establishment Clause prohibits direct public subsidies to religious schools. *Strout*, 178 F.3d at 60–1 (stating "there is *no* binding authority for the proposition that the *direct* payment of tuition by the state to a private sectarian school is constitutionally permissible"); *Bagley*, 728 A.2d at 136 (noting "we find no support for the proposition that the Establishment Clause prevents a state from refusing to fund religious schools."). The *Bagley* Court went further and concluded that "if the exclusion of religious schools is not required by the Establishment Clause of the First Amendment, it must be struck down because the State offers no other reason for its existence." *Bagley*, 1999 ME 60 ¶ 32, 728 A.2d 127. The *Strout*

---

the same result this Court concludes the First Circuit mandated in *Strout*.

**3.** Plaintiffs never formally filed applications for tuition payments for Cathleen Eulitt and Lindsey Freeman to the Minot School Committee and Superintendent and, therefore, their demands have never been formally denied. Plaintiffs claim they believed their requests for tuition payments would have been denied. The Eulitts state their elder daughter had attended St. Dominic's and they had requested and been denied tuition payments for her. They claim the office manager for the Minot Superintendent had informed them their other children would not be eligible for tuition payments, so long as they attended St.

Dominic's. Ms. MacKinnon claims she sent a letter in July 2002 to the Town of Minot, asking for tuition payments to St. Dominic's for Lindsey and never received a reply. Defendants deny these factual allegations.

**4.** The Eulitts originally named as Defendants the Department of Education, former Commissioner of Education J. Duke Albanese, School Union 29, Superintendent Robert E. Wall, in his personal and official capacities, the Minot School Committee. In a stipulated dismissal of parties, the Plaintiffs agreed to dismiss all defendants except the Department of Education and the Commissioner. (Docket No. 7.)

Court concurred, stating "we agree with the Maine Supreme Court that 'If the State's justification [had been] based on an erroneous understanding of the Establishment Clause, its justification would not [have] withstood any level of scrutiny.'" *Strout*, 178 F.3d at 64, n. 12.

In 2002, the United States Supreme Court decided *Zelman v. Simmons–Harris*, 536 U.S. 639, 122 S.Ct. 2460, 153 L.Ed.2d 604 (2002). In *Zelman*, the Supreme Court held that an Ohio school voucher program, which provided publicly-funded tuition aid to families whose children were attending religious schools, did not violate the Establishment Clause. The Plaintiffs contend that the *Zelman* holding should cause this Court to reassess *Strout's* continuing vitality, since *Zelman*, in their view, upholds the constitutionality of direct funding to religious schools like St. Dominic's. The Supreme Court also recently decided *Locke v. Davey*, —— U.S. ——, 124 S.Ct. 1307, 158 L.Ed.2d 1 (2004), in which it concluded that a Washington state statute, prohibiting state-aid to post-secondary students pursuing degrees in theology, did not violate the Establishment and Free Exercise Clauses.

█ This Court resists the considerable temptation to engage in its own analysis of the current state of the Establishment Clause, the Free Exercise Clause, and the Equal Protection Clause following *Zelman* and *Locke*. The *Strout* holding remains binding upon this Court and under the doctrine of *stare decisis*, this Court's discussion begins and ends with *Strout*. The doctrine of *stare decisis* "renders the ruling of *law* in a case binding in future cases before the same court or other courts owing obedience to the decision." *Gately v. Massachusetts*, 2 F.3d 1221, 1226 (1st Cir.1993). *See also Ramos v. Beauregard, Inc.*, 423 F.2d 916, 917 (1st Cir.), *cert. denied* 400 U.S. 865, 91 S.Ct. 101, 27 L.Ed.2d 104 (1970) ("One who seeks to overcome the principle of *stare decisis* should be prepared to offer compelling reasons which outweigh the public interest in the stability of legal doctrine."); *United States v. Maine*, 420 U.S. 515, 527, 95 S.Ct. 1155, 43 L.Ed.2d 363 (1975) ("the doctrine of *stare decisis* is still a powerful force in our jurisprudence").

█ The First Circuit has noted that "there may be occasions when courts can—and should—loosen the iron grip of *stare decisis*." *United States v. Reveron Martinez*, 836 F.2d 684, 687, n. 2 (1st Cir.1988). However, any such departure "demands special justification." *Arizona v. Rumsey*, 467 U.S. 203, 212, 104 S.Ct. 2305, 81 L.Ed.2d 164 (1984). In *Gately*, for example, the First Circuit upheld Judge Mazzone's conclusion that, in light of recent Supreme Court decisions, there had been "considerable landscaping" that had changed the "contours of the law," since the last First Circuit opinion. *Gately, supra;* 811 F.Supp. 26, 31 (D.Mass. 1992). In doing so, the *Gately* Court noted the District Court had been faced with a "different set of facts" and "a newly crafted set of legal rules" and therefore, the issue was one of "first impression" for the Circuit. *Gately*, 2 F.3d at 1228.

By contrast, the *Strout* Court ruled on precisely the same statutory provision now before this Court, a provision unchanged since 1999. Further, the parties in *Strout*, like the parties here, raised Establishment Clause and Equal Protection Clause arguments, both of which the *Strout* Court addressed. The First Circuit has, therefore, authoritatively answered exactly the same questions Plaintiffs now urge this Court to decide. Whether United States Supreme Court case law subsequent to *Strout* would or should cause the First Circuit to reassess its holding in *Strout* is a question for the First Circuit itself, not this Court. It remains this Court's obli-

gation to apply the law handed down by the First Circuit Court of Appeals in *Strout.*

## III. Conclusion

Based on the holding of *Strout v. Albanese*, it is ORDERED that the Recommended Decision of the Magistrate Judge is hereby AFFIRMED and it is further ORDERED that the Plaintiffs' Motion for Summary Judgment is DENIED and the Defendants' Motion for Summary Judgment is GRANTED.[5]

---

**5.** After the Plaintiffs objected to the Magistrate Judge's Recommended Decision and the State filed its Response, Plaintiffs filed with this Court a copy of the Brief of the United States as Amicus Curiae that had been filed with the United States Supreme Court in the *Locke v. Davey* appeal. The State moved to strike the filing on a number of grounds: 1) an asserted violation of Rule 5(a); 2) the Amicus Brief constitutes a selective presentation of only one of many briefs filed with the Supreme Court; and, 3) the Amicus Brief constitutes a supplemental filing in violation of the local rules. This Court grants the State's Motion to Strike.

On March 9, 2004, this Court received a written request from Plaintiff's counsel to file a supplemental brief to discuss the effect *Locke v. Davey* has on this case. In light of the basis of this Court's ruling, Plaintiff's request, which will be treated as a motion to file supplemental brief, is denied.