See also 14 F.Supp.3d 695, 2014 WL 5138914.

**Marcie FISHER–BORNE, for herself and as guardian ad litem for M.F.–B., a minor, et al., Plaintiffs,**

**v.**

**John W. SMITH, in his official Capacity as the Director of the North Carolina Administrative Office of the Courts, et al., Defendants.**

**Ellen W. Gerber, et al., Plaintiffs,**

**v.**

**Roy Cooper, et al., Defendants.**

**Nos. 1:12CV589, 1:14CV299.**

United States District Court, M.D. North Carolina.

Signed Oct. 14, 2014.

Amy E. Richardson, Wiltshire & Grannis LLP, Jonathan Drew Sasser, Jeremy M. Falcone, Ellis & Winters, LLP, Christopher A. Brook, American Civil Liberties Union of North Carolina, Raleigh, NC, Catherine M. Bradley, Daniel W. Meyler, David A. Castleman, Garrard R. Beeney, William R.A. Kleysteuber, Sullivan & Cromwell LLP, James D. Esseks, Rose A. Saxe, American Civil Liberties Union Foundation, New York, NY, Elizabeth O. Gill, American Civil Liberties Union Foundation, San Francisco, CA, for Plaintiffs.

Charles Gibson Whitehead, Olga E. Vysotskaya De Brito, N.C. Department of Justice, Raleigh, NC, Kathy R. Everett–Perry, Durham, NC, John Mark Payne, Greensboro, NC, for Defendants.

## ORDER

OSTEEN, JR., District Judge.

Presently before this court is a motion to intervene by two parties, Thom Tillis, Speaker of the North Carolina House of Representatives, and Phil Berger, President Pro Tempore of the North Carolina Senate (collectively "Movants"). (1:12CV589 (Doc. 119); 1:14CV299 (Doc. 75).) In light of the positions of the parties and the procedural posture of this case, this court finds no just reason for delay with respect to this ruling. After considering their entitlement to intervention as of right or, alternatively, permissive intervention, this court grants the parties' Motion to Intervene on the limited terms set forth herein.

## I. *INTERVENTION AS OF RIGHT*

In order to intervene as of right under Rule 24(a)(2) of the Federal Rules of Civil Procedure, a party must (1) make a timely motion to intervene, (2) have an interest in "the subject of the action," (3) be "so situated that the disposition of the action may ... impair or impede the applicant's ability to protect that interest," and (4) show that he is not adequately represented by existing parties. Fed.R.Civ.P. 24(a)(2); *Wright v. Krispy Kreme Doughnuts, Inc.,* 231 F.R.D. 475, 477 (M.D.N.C.2005).

This court finds the motion to intervene is timely. In determining whether a motion to intervene is sufficiently timely, this court must weigh "how far the suit has progressed," the "prejudice any resulting delay may cause the other parties," and "why the movant was tardy in filing its motion." *Alt v. United States Envtl. Prot. Agency,* 758 F.3d 588, 591 (4th Cir.2014). The cases in which Movants hope to intervene have been in front of this court for several months and over two years, respectively. Nonetheless, Defendants in both cases have only recently filed Answers, and more importantly, Movants sought to intervene within three days of the Supreme Court denying *certiorari* in *Bostic v. Schaefer. See McQuigg v. Bostic,* — U.S. ——, 135 S.Ct. 314, — L.Ed.2d ——, No. 14–251, 2014 WL 4354536 (U.S. Oct. 6, 2014) (denying *certiorari* in *Bostic v. Schaefer,* 760 F.3d 352 (4th Cir.2014)). It was only after the Supreme Court denied the petition in *Bostic* that Defendants began to concede relief, arguably resulting in Movants' heightened concern with defense of the North Carolina law. In light of the limited nature of the intervention which will be allowed, the intervention will not substantially delay these proceedings. Therefore, Movants have established that their motion is timely.

■ Second, this court agrees with Movants that their interest is sufficient in these cases to support intervention. Movants' interest must be "significantly protectable" to come within the meaning of Rule 24(a)(2), meaning that the interest must be more than a general concern with the subject matter. *See Donaldson v. United States*, 400 U.S. 517, 531, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971). Despite the recognition that general concerns are not "significantly protectable," the Supreme Court has held that "certain public concerns may constitute an adequate 'interest' within the meaning of [Rule 24(a)(2) ]." *Diamond v. Charles*, 476 U.S. 54, 68, 106 S.Ct. 1697, 90 L.Ed.2d 48 (1986) (citing *Cascade Natural Gas Corp. v. El Paso Natural Gas Co.*, 386 U.S. 129, 135, 87 S.Ct. 932, 17 L.Ed.2d 814 (1967)).

Courts have recognized that legislators have an interest in defending the constitutionality of legislation passed by the legislature when the executive declines to do so, even when a taxpayer may not have a protectable interest in making the same argument. *See, e.g., Revelis v. Napolitano*, 844 F.Supp.2d 915, 924–25 (N.D.Ill. 2012). Similar to the facts in this case, in *Revelis*, a select group of congressional leaders was authorized by the United States House of Representatives to defend the constitutionality of the Defense of Marriage Act ("DOMA") after Attorney General Eric Holder declared his intention not to defend DOMA in subsequent legal challenges. *Id.* The *Revelis* court found that the legislators' interest was sufficient to justify intervention as of right. In North Carolina, the General Assembly provides a similar mechanism through which the Speaker of the House and President Pro Tempore of the Senate may defend laws passed by the North Carolina General Assembly. *See* N.C. Gen.Stat. § 1–72.2. Movants are in front of this court based on rights conferred by that statute.

In determining Movants' interest, of particular significance to this court is the fact that the issues raised in *Bostic* and this litigation are not solely same-sex marriage, but include issues with respect to the constitutional relationship between the judiciary, the duly-elected state representatives, and to the vote of the people in a democratic process. That issue is recognized by the dissenting opinions in *Bostic* and *Kitchen*. The dissent in *Bostic* concludes:

> The U.S. Constitution does not, in my judgment, restrict the State's policy choices on this issue. If given the choice, some states will surely recognize same-sex marriage and some will surely not. But that is, to be sure, the beauty of federalism.

*Bostic*, 760 F.3d at 398 (Niemeyer, J., dissenting).

> Similarly, the dissent in *Kitchen* concludes:

> Though the Plaintiffs would weigh the interests of the state differently and discount the procreation, child-rearing, and caution rationales, that prerogative belongs to the electorate and their representatives.

*Kitchen v. Herbert*, 755 F.3d 1193, 1240 (10th Cir.2014) (Kelly, J., concurring in part and dissenting in part). As certain as it is that Plaintiffs have the right to advocate for what they believe is just for the individual parties, others may also have a substantial interest in defending that which they believe to be a power and prerogative that belongs to the States, the citizens, and their duly-elected representatives.

Accordingly, this court finds that, as authorized representatives of the legislature, Movants' desire to defend the constitutionality of legislation passed by the legisla-

ture is a protectable interest in the subject matter of this litigation.

▆ The third factor requires this court to determine whether the Movants are "so situated that the disposition of the action ... may impair or impede the applicant's ability to protect that interest." In this case, the interest identified by Movants is affected by the Fourth Circuit's decision in *Bostic*, which is the law of the circuit and binding on this lower court in light of the denial of *certiorari*. The potential for impairment in this district court is neither heightened nor lowered by Movants' participation or non-participation in light of representation being afforded that interest by North Carolina's Attorney General, as more fully discussed *infra*. However, also as more fully discussed *infra*, preserving the right to appeal this decision does have a direct effect on the Movants' ability to protect their interest.

▆ Finally, and critically, Movants must show that they are not adequately represented by an existing party. "Representation is generally considered adequate if no collusion is shown between the representative and an opposing party, if the representative does not represent an interest adverse to the proposed intervenor and if the representative has been diligent in prosecuting the litigation." *Delaware Valley Citizens' Council for Clean Air v. Pennsylvania*, 674 F.2d 970, 973 (3d Cir. 1982).

In both cases before this court, the State Defendants are represented by the North Carolina Attorney General's Office. Under North Carolina law, it is the duty of the Attorney General:

> To defend all actions in the appellate division in which the State shall be interested, or a party, and to appear for the State in any other court or tribunal in any cause or matter, civil or criminal, in

which the State may be a party or interested.

N.C. Gen.Stat. § 114–2(1).

In their motion to intervene, Movants make no claims of collusion between the Attorney General and an opposing party nor do they claim an adverse interest. Movants claim inadequate representation in part because the Attorney General did not plan to "distinguish *Bostic* on the grounds that outcome-determinative concessions made by the Attorney General of Virginia in that case have not been made by North Carolina in these cases." (Proposed Defendant–Intervenors' Mem. of Law in Supp. of Mot. for Intervention ("Intervenors' Mem.") 1:12CV589 (Doc. 120) at 15; 1:14CV299 (Doc. 76) at 15.) The North Carolina statutory and constitutional provisions at issue in the cases before this court are notably similar to the Virginia statutory and constitutional provisions deemed unconstitutional in *Bostic*. *See Bostic*, 760 F.3d at 367 n. 1. As a result, *Bostic* is binding precedent on this court.

> [T]he doctrine of stare decisis makes a decision on a point of law in one case a binding precedent in future cases in the same court, and such courts as owe obedience to the decision, until such time as the effect of the decision is nullified in some fashion: reversed, vacated, or disapproved by a superior court, overruled by the court that made it, or rendered irrelevant by changes in the positive law.

*Addison v. Piedmont Aviation, Inc.*, 745 F.Supp. 343, 349 (M.D.N.C.1990) (quoting 1B *Moore's Federal Practice* ¶ 0.402[2] at 25–27.). Although Movants make allegations with respect to the process pursuant to which *Bostic* was decided, those allegations do not present a substantial justification pursuant to which this court may disregard *Bostic*.

The First Circuit has noted that "there may be occasions when courts can—and should—loosen the iron grip of *stare decisis.*" *United States v. Reveron Martinez,* 836 F.2d 684, 687, n. 2 (1st Cir.1988). However, any such departure "demands special justification." *Arizona v. Rumsey,* 467 U.S. 203, 212, 104 S.Ct. 2305, 81 L.Ed.2d 164 (1984). *Eulitt v. Maine Dep't of Educ.,* 307 F.Supp.2d 158, 161 (D.Me.2004), *aff'd on other grounds sub nom. Eulitt ex rel. Eulitt v. Maine, Dep't of Educ.,* 386 F.3d 344 (1st Cir.2004). Special justification arises if a district court "had been faced with a 'different set of facts' and 'newly crafted set of legal rules' and therefore, the issue was one of 'first impression' for the Circuit." *Id.* at 161 (citing *Gately v. Massachusetts,* 2 F.3d 1221, 1228 (1st Cir.1993)). As stated earlier, the facts and law are virtually indistinguishable between *Bostic* and the cases before this court. The Court of Appeals for the Fourth Circuit can overrule *Bostic,* but absent "special justification," which is not present here, this court cannot.

Furthermore, the record before this court indicates that the Attorney General has in fact vigorously pursued North Carolina's defense of the laws challenged in this action prior to the decision in *Bostic.* In opposing Plaintiffs' motion for a preliminary injunction, Defendants filed extensive briefs and made compelling arguments in those briefs. (*See, e.g.,* State Defs.' Resp. in Opp'n to Movants' Mot. for Prelim. Inj. 1:12CV589 (Doc. 88) at 6–10; 1:14CV299 (Doc. 33) at 6–10; State Defs.' Mem. of Law in Supp. of Mot. to Dismiss Complaint ("Defs.' Mem.") 1:12CV589 (Doc. 28) at 8–13; 1:14CV299 (Doc. 38) at 8–13.) It appears that each of those briefs appropriately presented and argued the same issues upon which all of the relevant cases relied, including but not limited to, *United States v. Windsor,* 570 U.S. ——, 133 S.Ct. 2675, 186 L.Ed.2d 808 (2013);

*Washington v. Glucksberg,* 521 U.S. 702, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997); and *Baker v. Nelson,* 409 U.S. 810, 93 S.Ct. 37, 34 L.Ed.2d 65 (1972). The fact that *Bostic* has resolved these issues as a matter of law contrary to the State's position does not diminish the quality of the arguments advanced by the State Defendants.

Movants, whether intending directly or by implication, make a further suggestion with respect to the recent concessions by the State Defendants in their answer. Movants open their brief as follows:

> In part based on concessions made by the Attorney General of Virginia after he switched sides in the *Bostic* case, the Fourth Circuit ruled that Virginia's marriage laws were unconstitutional, and on October 6, 2014, the Supreme Court denied the three petitions for writ of certiorari that had been filed in the case. *Rainey v. Bostic,* [—— U.S. ——, 135 S.Ct. 286, —— L.Ed.2d ——] 2014 WL 3924685 (U.S., Oct. 06, 2014); *Schaefer v. Bostic,* [—— U.S. ——, 135 S.Ct. 308, —— L.Ed.2d ——] 2014 WL 4230092 (U.S., Oct. 06, 2014); and *McQuigg v. Bostic,* [—— U.S. ——, 135 S.Ct. 314, —— L.Ed.2d ——] 2014 WL 4354536 (U.S., Oct. 06, 2014). On the same day that the ruling in *Bostic* was issued by the Fourth Circuit, the Attorney General of North Carolina—a named defendant and also counsel for the other state defendants in these cases—announced that he would "stop making arguments" in defense of North Carolina's marriage laws and that "the State of North Carolina will not oppose the case moving forward." Press Conference of Attorney General Roy Cooper, July 28, 2014, *available at* http://www.wral.com/news/state/nccapitol/video/13846923/.

(Intervenors' Mem. 1:12CV589 (Doc. 120) at 6–7; 1:14CV299 (Doc. 76) at 6–7.) [1]

The suggestion, at least in this court's opinion, is that *Bostic* was wrongly decided because the Virginia attorney general improperly conceded important points of law; the structure of the paragraph appears to further imply that North Carolina's Attorney General is now following a similar path of improperly conceding important points of law. This court disagrees with that implication and is not persuaded that the Attorney General has inadequately represented Movants' interests thus far.

First, it is important to note here that the North Carolina Attorney General's concession came only after *Bostic* became final. Prior to that time, the North Carolina Attorney General defended the relevant laws. The Attorney General's argument in support of the motion to dismiss relied upon *Baker v. Nelson*, 409 U.S. 810, 93 S.Ct. 37, 34 L.Ed.2d 65 (1972) (*see* Defs.' Mem. 1:14CV299 (Doc. 38) at 10), contrary to Movants' description of the alleged position of the Virginia Attorney General in *Bostic* (*see* Intervenors' Mem. 1:12CV589 (Doc. 120) at 15; 1:14CV299 (Doc. 76) at 15). In this case, the North Carolina Attorney General also cited and relied upon *Washington v. Glucksberg*, 521 U.S. 702, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997), as well as a number of other cases in support of the State of North Carolina's motion to dismiss (*see* 1:14CV299, Defs.' Mem. (Doc. 38) at 11), contrary to Movants' allegations as to the Virginia Attorney General. Thus, here, unlike Movants contend as to Virginia, the Attorney General did assert the defenses which perhaps Virginia did not.

Second, Movants' challenge to the manner in which the Virginia Attorney General may have argued *Bostic* fails to recognize the independence of the United States

Court of Appeals for the Fourth Circuit and the fact that the Virginia Attorney General was not the only party defending Virginia's ban. The identification of counsel in *Bostic,* as appearing in the published opinion, lists a multitude of counsel appearing in various capacities. Counsel for Movants (John C. Eastman, Center for Constitutional Jurisprudence, Chapman University Dale E. Fowler School of Law) is listed as appearing on behalf of Amici Virginia Catholic Conference, LLC, and the Center for Constitutional Jurisprudence. The lengthy list of parties and counsel in *Bostic* suggests to this court that Movants' argument focusing on one party, as opposed to all of the Virginia ban's defenders, does not in any way undermine the decision itself nor does it suggest this court should find any circumstance upon which to disregard *Bostic.*

Movants, as directed by this court, have filed Defendants–Intervenors' Answer and Defenses ("Intervenors' Answer") (1:12CV589 (Doc. 125); 1:14CV299 (Doc. 81)). Movants raise several objections and defenses, including an argument that this court does not have subject-matter jurisdiction as dictated by *Baker v. Nelson*, 409 U.S. 810, 93 S.Ct. 37, 34 L.Ed.2d 65 (1972). Movants suggest consideration of a district court opinion that recently upheld a state marriage law, *Robicheaux v. Caldwell*, 2 F.Supp.3d 910 (E.D.La.2014). Movants also cite a recent order from a Supreme Court Justice "staying a Ninth Circuit decision invalidating Idaho's marriage law after subjecting it to strict scrutiny." (Intervenors' Answer 1:12CV589 (Doc. 125) at 7; 1:14CV299 (Doc. 81) at 7) (citing *Otter v. Latta,* —— U.S. ——, ——, 135 S.Ct. 344, —— L.Ed.2d ——, No. 14A374, 2014

---

**1.** All citations in this Order to documents filed with the court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

WL 4996356, at *1 (U.S. Oct. 8, 2014) (Kennedy, J.).)[2]

*Baker v. Nelson* was specifically addressed and ruled upon by the Fourth Circuit in *Bostic. Bostic,* 760 F.3d at 372–76. *Robicheaux v. Caldwell,* addressed elsewhere in this opinion, may be persuasive authority but it does not constitute binding authority. As a result, this court finds that Movants' allegations do not persuade this court that *Bostic* is not controlling at present, nor does it persuade this court that Movants' interests have not been adequately represented.

■ The issue of preservation of appeal and the implication for a claim of inadequate representation is a more difficult question. In other words, whether Movants' claimed interest, objecting to application of *Bostic* and appealing to higher courts, is an interest which may support intervention. Movants argue:

> In the event that this Court determines that *Bostic* nevertheless controls these North Carolina cases, Proposed Defendant–Intervenors will seek to preserve the issue of the constitutionality of North Carolina's marriage laws for purposes of appeal to the Fourth Circuit, the Fourth Circuit sitting en banc, and ultimately to the Supreme Court if necessary.

(Intervenors' Mem. 1:12CV589 (Doc. 120) at 7–8; 1:14CV299 (Doc. 76) at 7–8.)

This court requested responses to this argument from Plaintiffs and the North Carolina Attorney General. (*See* 1:12CV589 (Doc. 127); 1:14CV299 (Doc. 83).) Those responses were timely filed. In his response, the Attorney General cites *General Synod of the United Church of Christ v. Cooper,* No. 3:14–CV–213 (W.D.N.C. October 10, 2014), and alleges that "[a]lthough the right to any appeal has not been waived, the binding opinion of the Fourth Circuit Court of Appeals in *Bostic* addressed and rejected viable defenses of North Carolina's marriage laws." (*See* 1:12CV589 (Doc. 132) at 4; 1:14CV299 (Doc. 87) at 4.) This court construes the Attorney General's response to suggest that perhaps the State does not intend to appeal because of the conclusive nature of the *Bostic* decision in the circuit court and the Supreme Court. However, that response, without further analysis of the waiver issue particularly in light of the supplemental briefs, does not fully address whether Movants have an interest in preserving the right to appeal and whether those rights will be impaired if intervention is not permitted.

Plaintiffs have also responded to this court's inquiry; the following is their summary of that response:

> More specifically and in response to the Court's questions regarding the Intervention Motion, the Attorney General has not waived his rights to appeal to the Fourth Circuit or to the United States Supreme Court. Instead, in the reasonable exercise of litigation judgment (presumably based, at least in part, on the unanimous view of each of the four courts of appeals which have found discriminatory marriage laws to be unconstitutional), the Attorney General presently has chosen not to waste the state's limited resources on pursuing what would ultimately be a futile appeal. Putative Intervenors cannot demonstrate that such an exercise of litigation judgment constitutes inadequate representation, especially given the high degree of deference afforded in particular

**2.** The application to stay was subsequently denied by the United States Supreme Court

on October, 10, 2014.

to the litigation judgment of states' attorneys general.

(Pls.' Resp. to Court's Oct. 10 Order ("Pls.' Resp.") 1:12CV589 (Doc. 131) at 8–9; 1:14CV299 (Doc. 88) at 8–9.) Plaintiffs cite two circuit cases in support of their argument that the State has not waived its right to appeal, *United States v. Evans,* 404 F.3d 227, 236 (4th Cir.2005) and *Wells v. Shriners Hosp.,* 109 F.3d 198, 199 (4th Cir.1997). (*Id.* at 14.) However, neither of these cases directly addresses the factual and procedural history present in either of these cases, wherein initial objections to the requested relief were followed by concessions (albeit legally defensible concessions) to the requested relief.

 This court called for supplemental briefs from the parties because of the express language of the State Defendants' concession of relief. That language, quite properly recognizing applicable law, states that "Plaintiffs should be afforded appropriate relief in accordance with the law as described by the Fourth Circuit Court of Appeals in *Bostic v. Schaefer.*" (State Defs.' Answer and Defenses 1:12CV589 (Doc. 104) at 16; 1:14CV299 (Doc. 70) at 16). Movants' proposed answer, on the other hand, objects to the application of *Bostic,* arguably expressly preserving an objection to that opinion. Because "the judicial power of federal courts is constitutionally restricted to 'cases' and 'controversies,' " *Flast v. Cohen,* 392 U.S. 83, 94, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968), this court was uncertain that a case or controversy between the parties would still exist as suggested by Movants once this court grants the requested relief. "[B]ecause [t]his case-or-controversy requirement subsists through all stages of federal judicial proceedings, trial and appellate, [l]itigation may become moot during the pendency of an appeal." *United States v. Hardy,* 545 F.3d 280, 283 (4th Cir.2008)

(alteration in original) (internal quotations marks omitted) (citations omitted).

Both parties in this case cite this court to the well-reasoned opinion from the Western District of North Carolina addressing similar issues in that case. *See General Synod,* No. 3:14–CV–213, 2014 WL 5094093 (W.D.N.C. Oct. 10, 2014). This court agrees with the holding of the *General Synod* court, and with respect to the waiver issue, finds it compelling. *See id.* (Doc. 121) at 5 ("[T]he court has considered proposed intervenors' argument that the Attorney General has improperly given up the right to appeal this court's final decision; however, the court does not read the pleadings that broadly."). Although this court is not sufficiently familiar with the underlying pleadings in *General Synod* to fully determine the applicability of the holding to this case, the pleadings in this case may very well be sufficient to preserve that right as recognized in *General Synod. See, e.g., Singleton v. Wulff,* 428 U.S. 106, 121, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976) ("The matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases."). However, in light of the supplemental briefs filed in this case and the presence of what appears to be a recognition by all parties that the State does not intend to appeal, this court is confronted with an additional issue that was not presented by the State and the plaintiffs to the court in *General Synod.* As a result, this court does not find it necessary to resolve the question of whether an appeal has been waived in light of the additional findings hereinafter.

Plaintiffs argue that the "Attorney General's decision not to pursue a wasteful and futile appeal amounts to mere 'disagreement over how to approach the conduct of

the litigation [and] is not enough to rebut the presumption of adequacy.' *Stuart* [*v. Huff*], 706 F.3d [345] at 353 [ (4th Cir. 2013) ]; *see also id.* at 354." (Pls.' Resp. 1:12CV589 (Doc. 131) at 19; 1:14CV299 (Doc. 88) at 19.) Perhaps so. However, in terms of the pending motion to intervene, it may also suggest that Movants are not adequately represented by existing parties, *see* Fed.R.Civ.P. 24(a)(2); *Wright v. Krispy Kreme Doughnuts, Inc.,* 231 F.R.D. 475, 477 (M.D.N.C.2005), to the extent Movants intend to exercise whatever remaining right to appeal exists and the Attorney General has concluded the State does not. In allowing intervention in the context of an injunction prohibiting a religious group from displaying a menorah on city property and the city not appealing the decision, the Sixth Circuit found that the "decision not to appeal by an original party to the action can constitute inadequate representation of another party's interest." *Ams. United for Separation of Church & State v. City of Grand Rapids,* 922 F.2d 303, 306 (6th Cir.1990); *see also H.L. Hayden Co. of New York v. Siemens Med. Sys., Inc.,* 797 F.2d 85, 88 (2nd Cir. 1986) (noting, in dicta, "[w]here issues relating to the appellate process create a divergence of interests between the party representing the would-be intervenor's interest and the would-be intervenor, intervention for the purpose of protecting the latter's appellate rights may be appropriate").

In *United States v. American Telephone & Telegraph Co.,* the Court of Appeals for the District of Columbia Circuit framed the issue as follows: "The decisive question, then, is whether a divergence of interests solely at the appeal stage can justify intervention for the limited purpose of taking an appeal from a lower court ruling. Commentators cite cases going either way on this question, depending on the particular facts." *United States v. Am. Tel. &*

*Tel. Co.,* 642 F.2d 1285, 1293 (D.C.Cir. 1980). The District of Columbia Circuit concluded that "[u]nder *Smuck v. Hobson* [408 F.2d 175 (D.C.Cir.1969) ] this divergence of interests, manifested in the Government's refusal to appeal, is evidence of inadequate representation." *Id.* at 1294.

As recognized by the Court of Appeals for the Sixth Circuit:

[A] decision not to appeal by an original party to the action can constitute inadequate representation of another party's interest. The Secretary of State has not sought interlocutory review of the preliminary injunction as it relates to two of the three temporarily invalidated provisions, and Michigan's attorney general has not appealed at all. While passively tolerating a preliminary injunction pending a final resolution of the merits may serve the interests of the State of Michigan, it cannot be said to represent the Chamber's interests, in view of its concern with timeliness. The decision not to appeal certain aspects of the district court's preliminary injunction may amount to sound litigation strategy and a prudent allocation of Michigan taxpayers' money, but this decision also further illustrates how the interests of the state and of the Chamber diverge. The State of Michigan has already demonstrated that it will not adequately represent and protect the interests held by the Chamber. Accordingly, the Chamber has made a sufficient showing in this regard.

*Michigan State AFL–CIO v. Miller,* 103 F.3d 1240, 1248 (6th Cir.1997) (internal quotation marks omitted) (citing *Ams. United,* 922 F.2d at 306).

Plaintiffs argue this issue is settled and that an appeal is meritless. (Pls.' Resp. 1:12CV589 (Doc. 131) at 15; 1:14CV299 (Doc. 88) at 15 ("*Bostic* unequivocally held that Virginia's constitutional and statutory

prohibition of same-sex marriage in Virginia ... violates the Due Process and Equal Protection Clauses of the Fourteenth Amendment of the United States Constitution; there is no argument that this analysis would not apply to North Carolina's constitutional and statutory prohibition of same-sex marriage.").) Plaintiff is correct; *Bostic* resolved the matter in this district court. However, there is still some disagreement between some judges and courts on issues relevant to these cases. The rulings in *Bostic* and *Kitchen*, as thoughtful as they are, contain dissenting opinions that also employ careful reasoning and thoughtful analysis on the constitutional issues, including whether strict scrutiny or rational basis review applies and how the courts should weigh the various policy considerations and arguments. In *Robicheaux v. Caldwell*, 2 F.Supp.3d 910 (E.D.La.2014), a district court upheld Louisiana's same-sex marriage ban in a well-reasoned opinion, concluding in part "that Louisiana's laws are rationally related to its legitimate state interests." *Id.* In *DeBoer v. Snyder*, 973 F.Supp.2d 757 (E.D.Mich.2014), a district court in Michigan struck down Michigan's same-sex marriage ban, but did so pursuant to a rational basis test without reaching the question of whether strict scrutiny applies. This court does not suggest either position, to appeal or not to appeal, as substantively meritorious, only that the existence of any continuing right may be complicated by whatever continuing force any remaining cases might have as well as applicable jurisdictional and jurisprudential requirements.

Nevertheless, notwithstanding some of the ongoing cases on a national level, this discussion is merely academic in this court. The United States Court of Appeals for the Fourth Circuit has issued its ruling in *Bostic*. As recognized by the district court in *General Synod*, this district court, sitting in North Carolina and the Fourth

Circuit, is bound to apply that law. The parties to this case have the right to expect nothing less, whether they agree with the law or not. The issue presently before this court is solely whether to permit intervention for the purpose of preserving and taking an appeal.

Although it is a very close issue, this court concludes that the motion to intervene should be granted, but only for the purpose of lodging an objection and preserving that objection to this court's application of *Bostic*. In reaching this conclusion, this court is not expressing an opinion on the relative merits or demerits of any appeal, only that there is an appeal right that a party with arguable standing and interest has sought to preserve.

Intervention will be substantially limited in this court. Specifically, this court will order the filing of the proposed answer (1:12CV589 (Doc. 125); 1:14CV299 (Doc. 81)) setting forth the answer and objections in this case. In light of the clear import of *Bostic*, no further briefing will be permitted with respect to the pending Motion for Judgment on the Pleadings (1:12CV589 (Doc. 116); 1:14CV299 (Doc. 72)) and the response filed by the State of North Carolina (1:12CV589 (Doc. 122); 1:14CV299 (Doc. 78)). Both the motion and response accurately state the law of this circuit, and no further pleadings from Movants will be permitted.

### III. CONCLUSION

In conclusion, this court finds that Movants' motion to intervene should be allowed, but only for the limited purposes expressed herein.

**IT IS THEREFORE ORDERED** that the Motion for Intervention (1:12CV589 (Doc. 75); 1:14CV299 (Doc. 119)) is **GRANTED** for the limited purposes expressed herein.

**IT IS FURTHER ORDERED** that Movants' answers and defenses in each of these two cases are deemed **TIMELY FILED.**

**IT IS FURTHER ORDERED** that Movants' objections to this court's jurisdiction, to the application of *Bostic,* and to the grant of the pending motion for judgment on the pleadings are **NOTED** and **OVERRULED.**